Given the time shift from 15 to 10 minutes in this case, I'm happy to discuss whatever issues the court is particularly interested in. If there's no specific issues, what I'd like to do is discuss the destruction of evidence instruction as well as the Miranda issue. The Miranda issue? The Miranda issue as well. In terms of using the defendant's suppressed statements to cross-examine the defense experts. Right, the impeachment issue. Exactly. Thank you. You probably should skip to that. Okay, absolutely. So the district court should not have permitted the government to impeach the defense's expert witness, Dr. Carroll, with Mr. Rosales' suppressed statements. The general rule is that under James v. Illinois, the prosecutor can't use a defendant's statements to impeach another defense witness. Now, what the government's arguing here is that when you have a defense expert and you're using the impeachments to, I'm sorry, the statements to impeach the defense expert, then it's okay. The problem is that all of the cases that the government cites all involve situations where the use of those statements actually changed the expert's opinion. And here we have the opposite situation. We have a situation where the expert stated over and over that, no, this does not actually change my opinion. Counsel, can you clarify one point for me before we get deep into this one? Sure. As I read, when I read Dr. Carroll's testimony, I was surprised that the government didn't object to it on hearsay grounds. So was there, is there an exception to the hearsay rule that would have permitted Dr. Carroll to testify on this? For medical diagnosis. He can testify as to what he told him. Exactly. I mean, I understand he can give a diagnosis, but how can he testify as to facts just on the basis of what the guy told him? My understanding, Your Honor, is that Dr. Carroll could use the statements that Mr. Rosales made in order to come up with his diagnosis. And in terms of explaining that diagnosis to the jury, he could also say the grounds upon which his diagnosis was based. And my understanding is that the government didn't necessarily dispute that that hearsay exception was met. But then they wanted to impeach it, right? So, you know, so you snuck in the defendant's statements through the expert. So then I say, well, we are allowed to use the suppressed statement for impeachment, right? So if your client had testified, he could have been impeached with it, right? Well, I think that's an interesting question because what... I'm sorry, you don't think he could have? Well, I don't necessarily know that this was impeachment because the prior statements that he made were not necessarily inconsistent. Well, it depends a lot on what he says. Correct. But he could have been used, he could have been impeached with it if it was, depending on what he said, this was proper impeachment, right? Assuming that it's used for purposes of impeachment. I'm not sure it was here. And the reason is this. The statements that he made initially that were suppressed were, I intend to go to San Diego. What they used to try to impeach, and those are the statements they used. But then what he essentially told the expert was, I don't remember. I'm not sure that those things are necessarily inconsistent. I'm not sure it's a prior inconsistent statement. If I say, you know, I said this at one point, but then I say I don't remember saying that, I'm not sure those are consistent. So my first point is that... I'm a little confused there. Sure. You seem to be conceding then that Walder applies here? In other words, if it were impeaching testimony, why it could be used. I'm not necessarily conceding that. My first point is that it's not necessarily impeachment. But assuming that it was. I don't know that you can necessarily use Rule 806 to overcome a constitutional right. Here, if you're going to do that, you have a situation where Mr. Rosales chose not to testify. He chose not to testify because he wanted to preserve his constitutional right not to incriminate himself. So if you're allowing Rule 806 to essentially trump that, then you're overcoming these constitutional protections that were designed. And to your point, Judge Kaczynski, I think it's not going to necessarily always make things fair. But the fact is that federal rules of evidence don't always come out fair. And we do have constitutional protections for defendants that don't always make things fair. I just want to... Well, as a generality, that might be true. But if, in this case, defense puts on the expert and the expert essentially testifies, I mean, does testify as to what he was told by the defendant, that's putting the defendant's statement before the jury. That's right. And I don't understand why, at that point, the government is entitled to impeach that statement, even though it came in as a statement of declarant, just as well as it could have impeached the defendant if he'd taken the stand and made the same statements himself. Rule 806 basically says you can use a declarant's statements. It doesn't necessarily say you can use the defendant's statements. So we believe that Rule 806, in light of constitutional concerns, needs to be interpreted so as to exclude situations like this. What are the constitutional concerns? The constitutional concerns that these statements were suppressed because his Miranda waiver wasn't knowing, intelligent, and voluntary. Right, but the suppression wasn't complete. The suppression does not go to impeachment. Okay? So we have a situation here where essentially the defendant wants to testify, doesn't want to take the stand and be cross-examined, doesn't want to take the stand and be impeached, but he wants to testify through his expert. So the expert gets in the stand and says, you know, she's sort of like a Charlie McCarthy puppet, right? And the jury hears the defendant's side of the story. Doesn't it make sense that if the government is entitled to impeach the defendant himself with a suppressed un-Miranda statement, why shouldn't it be able to impeach the defendant's own statement when they don't come out of his mouth, they come out of the mouth of the expert? We would just say that for the two reasons that I've given, that first of all, I'm not really sure it was actually impeachment here, and second of all, even if it were. We can talk about that. I do want to explore that a little more to understand, but assuming it is impeachment. Okay. And the answer is just because the Fifth Amendment? The fact is, you know, as I was mentioning the – We have no case on point. We do not. So why don't you persuade me that that's the correct rule that we should adopt? Well, the point that – It doesn't strike me as the correct rule, just to give you a hint. I understand. It strikes me as sort of an only fair kind of situation. I appreciate the direction, Your Honor. So I think there is very little case law on this issue, and there's, you know, below the only thing – Which gives us federal judges a great sense of authority because we can then – Absolutely. We can then – You can stretch your arms, absolutely. Exactly. So tell me why this shouldn't fly. Because I'm not sure that I have any other new reasons that is going to necessarily satisfy, Your Honor, if I haven't already. But the bottom line that we would say is this is an impeachment. Even if it were, there are certain protections that need to be in place here that just don't always necessarily make it fair. And that's our position. And once you talk just for a bit on the other pawn, you don't think this is impeachment at all? We don't believe it's impeachment, no, Your Honor. So the doctor, the expert testifies defendant said what to me? Yeah, defendant told me he doesn't remember anything. He doesn't remember saying those things. Okay. Correct. So first of all, the government said below – He doesn't remember anything about the incident or he doesn't remember saying – Both. Both. So first of all, the government – They're really quite different. Yes, but I do believe that he said both. He says I don't remember the incident and I don't remember saying those things. So let's take them in order. Let's say that the statement is I don't remember the incident. And then they come up with this statement that says right there as it was happening, he tells us X. Correct. Why isn't that impeachment? Because, well, first of all, Your Honor, the government below said that they were impeaching expert. They didn't say that they were impeaching his statements. No, we've gotten past that. But we've gone past that. All right. So assume that the question is did they impeach his statements. If the defendant had said to someone else that was suppressed and he said I remember that statement, I remember coming to the port of entry, and then the expert said the defendant told me that he doesn't remember that, those would be inconsistent. But it's not necessarily inconsistent to say I at the time say I was doing this and then later say I don't remember that. Those are not inconsistent. So that's why we're arguing it's not impeachment, Your Honor. I realize I'm almost out of time, and so with the court's permission I'll save this a few seconds. You're actually over time, but okay. I am. My apologies. Okay. We'll hear from the government. May it please the Court. Colin McDonald for the United States. The district court's statement, and I think it's important to begin with this, Your Honors, this would be in my opinion an absolutely unqualified perversion of justice and an absolute standing of the truth-seeking of this proceeding totally on its head. That's from ER 213. That was the district court's assessment of this particular situation. And indeed, the district court — Many people think that of Miranda. There's — and there's a clear provision to allow impeachment evidence that extends beyond the Miranda rule, and I think that rule should appropriately apply here, Your Honor. But it applies to impeachment of the — this applies to impeachment of the declarant? There's two prongs. One would be for the hearsay declarant, and to Your Honor's question, the evidence was admitted for the truth of the matter asserted. The court said, as a matter of fact, this was to the defense, as a matter of fact, you argued, and I agreed it's an exception to the hearsay rule. It's admissible under 8034. I didn't give a limited instruction to the jury, nor was one sought. That's ER 202. So that would be for the defendant, a hearsay declarant. Then there's the ability, and this was the Wilkes case, the Trujillo case identified this, to impeach the expert himself. And I think here that that would — that was appropriate, and the evidence was, in fact, impeaching. Let me point the Court to the statements. This is on ER 138. This is Dr. Carroll's statement. He says he doesn't remember anything. This is about the June 21 event. He doesn't remember being there. He doesn't remember talking to anyone. He doesn't remember it happening at all. Follow-up question, he was asked whether Rosales had a plan to go into the United States. This is the quote. No, he didn't even remember going to the border. But I did ask him, well, were you planning around that week to go somewhere? And he said, not at all. He actually told me, I don't know why I would have been there. Those were the statements about the June 21 entry. And then the statements that contradicted and that impeached that. And the expert said that he believed the — Rosales to be telling the truth. And he said that he relied on the statements that were relayed to him and that they were critical to his analysis. Here are the statements made on June 22 that were suppressed that contradict those statements made by Dr. Carroll. First, that he left Mexico to find work and live in the United States. That's after he said to Dr. Carroll that he had, in fact, no idea why he would have been at the border that day. And second, that he was trying to get to San Francisco. Now, a further point. Why couldn't he have forgotten? I mean, he's there at the border and he's remembering, but he's sort of in a haze. Why couldn't he have forgotten by the time Dr. Carroll, he doesn't remember? I think that's possible, but I think under the framework of the law. How does it impeach his statement to Dr. Carroll that he made an inconsistent statement to the border patrol? Because Dr. Carroll said that he was relying critically on Rosales' statements. And then, with respect to whether it would change his opinion, with respect to the June 21 statements, and this is critical because defense says that it wouldn't have changed his opinion. Dr. Carroll said, in fact, that he had never seen those statements before he was on the stand. That's ER 226 through 227. And then this was his statement with respect to whether it would change his opinion. ER 228. I would actually have to have an opportunity to ask more specifically about the things he said this day and how that corresponds to that first day. And then he went further to agree that the statements that Rosales gave to him, or gave on June 22nd, contradicted, that's the word that was used, contradicted the statements made to Dr. Carroll. That's on ER 28. He then goes on to say, if there's any new information that I haven't seen, and he hadn't seen the June 22 admissions, I can't really give an opinion on that unless I have at least talked to the defendant and asked him what this was about, what was going on. That's on ER 239. So that's with respect to the June 21st statements, or June 22nd statements, where the U.S. did not bring in a rebuttal witness. They brought in – we brought in a rebuttal witness with respect to the June 24th witness, and that would be specifically to impeach the hearsay declarant. But I first want to talk about the James case to discuss why James doesn't foreclose the impeachment here of the defense expert. That did not involve a situation where a defense expert relayed statements from the defendant to the jury, because he absolutely did here. He absolutely – the court said, it's the same as if the defendant testified. That's on ER 213. And indeed, Rosales was able to testify at trial, but he did not have to leave counsel table. He did not have to raise his right arm. He was able to let the defense expert testify for him. He was able to testify that he had lost his wife, that he – that caused his increased drug usage. All those facts came in by – via hearsay statements through the defense expert. And like the district court said, it would be an absolute unqualified perversion of justice to allow for the defense to relay those statements straight to the jury's ears without the defendant being subject to cross-examination. But presumably the jury would have been instructed that those statements were there only as a basis for the doctor's opinion and they were not to be credited. That's incorrect, Your Honor. The – you would think that might have happened, but in fact they were offered for the truth of the matter asserted. The court on ER 202 through 205, 206, discussed this. He says, you're clearly offering them for the truth of the matter asserted. That's on ER 205. And he also said, I didn't give a limiting instruction to the jury, nor was one sought. ER 202, at the motion eliminate stage, the defense had proffered Rule 803-4 as their ability to get the statements in for the truth of the matter asserted. The government objected. The court agreed with the defense and said, I agree. I think that the statements can come in for the truth of the matter asserted. The court even warned at that point, he warned the defense, that if you bring them in, the government can then seek to impeach. So the defense knew, the defense knew that if they chose to put the defense witness on the stand to bring out the statements, that they were going to be subject to cross-examination. There's talk about a constitutional issue. The defense could have chosen to avoid this situation by not putting the defense expert up there and relaying the defendant's statements to the jury. That's the remedy. It's for the defense to understand, well, and the court gave them that awareness beforehand. The court said, if you put him up, he's going to be subject to cross-examination, and they did anyway. So that's the constitutional. That's their way to avoid this issue is by not putting him up in the first place. You want to spend the next couple of minutes talking about the modified categorical approach and whether this is a divisible statute? Yes, Your Honor. The pivotal question there is, is whether the alternative means, alternative elements of functionally separate crimes? And the Patterson case that we noticed for the Court, the Patterson case from the Cal Supreme Court, specifically states that Section 11352 sets out alternative offenses. And so I think that the Patterson case clearly forecloses the question as to whether 11352 is divisible. And, in fact, absolutely it is.  There are two cases in Section 11352, some of which, quote, bear no resemblance to others, rather than create statutes separately prescribing each drug crime. That's straight from the Patterson case. Otherwise, here we're basically engaged in nothing more than legal imagination. There's no case that has said that a defendant under 11352, that six jurors found that he was transporting and that six jurors found that he was selling drugs. There's no case, not even 11 to 1, there's no case that stands for that proposition. And under Duenas, the defense's burden is therefore not met. We are engaged in pure legal imagination. Counsel, where does Rendon fit in this case? Well, I think Rendon sort of clarified DECOMP, the standard of DECOMP. And it looked at, it analyzed 459, the entry into a vehicle with intent to commit a felony. And Rendon said that California law was clear, there was clear case law that the jury did not have to be unanimous with respect to the felony that was intended to be committed inside the vehicle. So I think Rendon is supportive of our position. I don't think it changes, it didn't change DECOMP, but it was clear that the rule of Duenas must be met, that we can't be just engaged in legal imagination. And in that case, under the analysis of 459, there was clear California case law that said jurors do not have to be unanimous with respect to the felony that a defendant intends to commit upon entering a locked vehicle. Here, there's no case, and I would say that the statute itself, the jury instruction, the case law, including Patterson, and in related statutes that this court has recently considered, all of that supports the finding that 11352 is in fact divisible. And unless the court has further questions, I will submit. Thank you. You used up your time. Do you want a minute for rebuttal? Thank you. Very briefly on the suppression issue, I just want to point out that the government, everything that they're saying, well, this proves that this was a travesty of justice, this proves that this was offered with the truth of the matter asserted, all the authority that the government's citing is the district court statements, and that's what the court's here to review. So that in itself is not necessarily legal authority that the court should be relying on. I want to move very briefly to the issue of the modified categorical approach. The government is saying that there needs to be some sort of case, because otherwise it's just legal imagination. But that's actually not true, because in Griselle, this court decided en banc that when you have a statute such as this where things are actually listed in the alternative, no legal imagination is required. So I just wanted to point out that that's actually not required. We've met that. It's also an interesting question in terms of burden of proof. The government's sort of putting this on us to say, well, we have to show a case, but the problem is that because of Griselle and because of this legal imagination that it's actually the government's burden to prove a sentence in enhancement by at least clearing convincing evidence. We don't think that Patterson does that for the reasons set forth in R-28J. And unless the Court has further questions, I'll sit here.  Thank you, Your Honor. Thank you.
judges: Kozinski, O'scannlain, Bybee